IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| L.G. MOTORSPORTS, INC. | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| VS. | § | CASE NO. 4:11CV112 |
| | § | |
| NGMCO, INC., | § | |
| CORVETTE RACING, INC., | § | |
| MICHELIN NORTH AMERICA, INC., | § | |
| and DOUG FEHAN | § | |
| | § | |
| **Defendants.** | § | |

## REPORT AND RECOMMENDATIONS OF UNITED STATES MAGISTRATE JUDGE

Now before the Court is Defendant General Motors, LLC f/k/a NGMCO, Inc.'s Motion to

Dismiss (Dkt. 6).  As set forth below, the Court finds that the motion should be GRANTED in part

and DENIED in part.

### FACTUAL BACKGROUND

This is a removed action.  Plaintiff L.G. Motorsports, Inc. (LG) claims that its efforts to race

the number 28 Corvette C6 in the GT2 Class of the American Le Mans Series has been stymied by

the anti-competitive acts of GM, LLC (New GM), Corvette Racing, Michelin and Doug Fehan.

LG contends that its efforts to continue its World Challenge record in racing was

compromised when the Old GM (the GM that went into bankruptcy) lobbied to have the sanctioning

body add 190 pounds to its Corvette which "effectively neutered the vehicle."  LG decided to race

its car in the American Le Mans Series, but only after it secured promises from Old GM that GM

would not race a GT2 series car.

LG is in the business of not only racing but also building race cars and selling automobile parts.  LG contends that its success is tied to its performance on the track.  LG contends that, to race in various series, there must be a completed homologation process.  One series, the Automobile Club de L'Ouest (ACO) requires that factory specifications be provided for the road car and that any deviations be approved by the governing body.  A competitor of ACO, Federation Internationale de L' Automobile (FIA) requires authorization and cooperation of the manufacturer to complete homologation.

LG purchased a homologated race car from Riley Technologies (Riley).  This car was approved by GM and sold as a GT2 Corvette to LG.  LG claims that it purchased the car based on the promise by GM that it would complete all necessary approvals for homologation according to the FIA and that GM was not planning to race a vehicle in the GT2 class.  This all took place in the spring of 2008.

LG raced the car in the ACO series in 2008, and in the fall of 2008, alleges that GM suddenly changed course and decided to race a GT2 class car in the FIA series and refused to work with Riley and complete the homologation process required by the FIA.  All these actions occurred prior to GM's bankruptcy.  As a result, LG could not compete in the FIA sanctioned events, resulting in a reversal of its racing fortunes.  LG alleges that the new GM has continued to take actions to exclude LG from sanctioned FIA events.

In a statement that would make any advertising agency proud, LG contends that Michelin tires are the best in the sport.  And second best is not even close.

LG contends that the new GM, Corvette Racing (the in-house marketing organization of new GM) and Doug Fehan, the head of Corvette Racing, have all entered into an express agreement with Michelin whereby Michelin will not provide or sell Michelin racing tires to LG.  Because Michelin would not provide tires, LG alleges that its driver quit the team resulting in a substantial loss of time and money to LG.[1]  LG alleges in its petition a number of instances where it tried to secure Michelin tires but to no avail.

In August of 2009, LG alleges, Michelin told it that the new GM did not want LG to have Michelin tires.  LG states that this is the type of anti-competitive activity practiced by the new GM to secure its place in the winner's circle to the exclusion of a smaller competitor, LG.

LG brings its suit for violations of the Sherman Antitrust Act and Texas Free Enterprise and Antitrust Act of 1983, unlawful monopolization (and attempted monopolization) in violation of Section 2 of the Sherman Act and Texas Free Enterprise and Antitrust Act of 1983, tortious interference with prospective contractual relations, tortious interference with existing contract, business disparagement and civil conspiracy.

### STANDARD

General Motors, LLC has filed a Motion under Federal Rule of Civil Procedure 12(b)(6) (Dkt. 6).  Defendant Michelin North America, Inc. has filed an unopposed notice of joinder in the motion (Dkt. 9).  In the Fifth Circuit "(A) motion to dismiss under rule 12(b)(6) 'is viewed with disfavor and is rarely granted.'" *Collins v. Morgan Stanley Dean Witter,* 224 F.3d 496, 498 (5th Cir.

---

[1]The Court has recommended that Plaintiff's claims against Fehan should be dismissed for lack of personal jurisdiction.

2000) (quoting *Kaiser Aluminum & Chem. Sales v. Avondale Shipyards,* 677 F.2d 1045, 1050 (5th

Cir. 1982)).  The court is required to construe the complaint liberally in favor of the plaintiff, and

takes all facts pleaded in the complaint as true.  *See Campbell v. Wells Fargo Bank*, 781 F.2d 440,

442 (5th Cir. 1986).  "To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead 'enough

facts to state a claim to relief that is plausible on its face.'" *Severance v. Patterson,* 566 F.3d 490,

501 (5th Cir. 2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 1974, 167

L.Ed.2d 929 (2007)).

ANALYSIS

**Disparagement**

General Motors, LLC claims that LG's disparagement claim fails.  The general elements of

a claim for business disparagement are publication by the defendant of the disparaging words, falsity,

malice, lack of privilege and special damages.  *See Hurlbut v. Gulf Atlantic Life Ins. Co.*, 749 SW

2d 762 (Tex. 1987).  In the petition, LG only alleges that the Defendants published disparaging

words about LG Motorsports' economic interests - not that the Defendants disparaged LG

Motorsports.  The petition is silent as to what disparaging words were stated.

LG has submitted a declaration of Lou Gigliotti, President of LG.  He states that, in

September of 2009, Fehan disparaged LG by asserting that LG failed to comply with the applicable

rules - effectively, that LG had cheated or had achieved a higher qualifying position than GM's

Corvette Racing team by other than skilled technical prowess.  *See* Dkt. 22 at Exhibit A.

However, in ruling on a Rule 12(b)(6) motion to dismiss, the district court cannot look

beyond the pleadings, *Cinel v. Connick,* 15 F.3d 1338, 1341 (5th Cir.1994).  Thus, the Court will not

look beyond the pleadings here.  Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." *See Ashcroft v. Iqbal,* 556 U.S. 662, 129 S. Ct. 1937, 1949, 173 L. Ed.2d 868 (2009).  Rule 8 does not require "detailed factual allegations but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.*  Thus, a complaint will survive a motion to dismiss if it contains "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed.2d 929 (2007) (internal quotation omitted). A plaintiff meets this standard when it "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 129 S.Ct. at 1949.  Nevertheless, specific words or statements must be identified in order to determine whether the statements are in fact disparaging or false.  *Granada Biosciences, Inc. v. Barrett,* 958 S.W.2d 215, 222 (Tex.App.-Amarillo 1997, pet. denied).

The Court can find no statements in the petition which disparage LG or its economic interests.  Nor is there any pleading of facts in support of the publication element of its claims. *See WFAA -TV, Inc. McLemore*, 978 S.W.2d 568, 571 (Tex. 1998).  It is just the type of conclusory pleading that *Iqbal* disfavors.  After thoroughly reviewing the petition, LG's complaint for business disparagement does not pass "*Iqbal* muster."

**Restraint of Trade and Monopoly**

General Motors, LLC purchased the assets of old GM on July 10, 2009.  Thus, the Court will first look to the petition to determine the complaints raised against GM, LLC on or after July 10,

2009.

Plaintiff alleges that GM, LLC has entered into an agreement precluding LG from purchasing or otherwise obtaining Michelin racing tires.  However, other teams racing different cars are not affected.  Michelin goes along with this conduct because it wants to sell tires to GM, LLC.  *See* Dkt. 1-1 at ¶ 36.  LG also alleges that GM, LLC continues to refuse to complete the homologation with Riley.  *See* Dkt. 1-1 at ¶ 38.  A driver for LG also tried to obtain Michelin tires for the Corvette.  He was not able to do so but was able to obtain tires for a Ford that he drove later on.  *See* Dkt. 1-1 at ¶ 41.  In or about August 2009, Michelin confirmed that GM, LLC did not want LG to have Michelin tires.  Other teams were not so precluded.  *See* Dkt. 1-1 at ¶ 42.

Thus, viewing the petition in the light most favorable to the Plaintiff, it appears that a jealous racing sports competitor has entered into an agreement to keep a smaller racing competitor from competing against it by preventing a manufacturer from selling tires to the smaller racing competitor. In addition, the larger racing competitor refuses to complete the homologation process with Riley so the smaller racing competitor can participate in one of the valued sanctioned car events.

**Section I of the Sherman Act and Texas Free Enterprise and Antitrust Act**

The federal antitrust laws protect competition, not competitors.  *Brunswick,* 429 U.S. at 488, 97 S.Ct. at 697.  Section 1 of the Sherman Act states that "[e]very contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is declared to be illegal."  15 U.S.C. § 1.

The first question to be addressed is whether LG has sufficiently stated a claim for *per se*

violation of Section 1 of the Act.  If the application of the *per se* rule is appropriate, competitive

harm is presumed and further analysis is unnecessary.  *See Viazis v. American Ass'n of Orthodonists*,

314 F.3d 758, 765 (5th Cir. 2002).  The Supreme Court has held that a vertical restraint is not illegal

*per se* unless it includes some agreement on price or price levels.  *See Business Electronics Corp.*

*v. Sharp Electronics Corp.*, 485 U.S. 717, 735 (1988).  Here, there is no allegation as to price.  GM,

LLC and Michelin are not direct competitors.  Therefore, this is not a horizontal restraint case but

rather a vertical restraint case, if at all.

In order to demonstrate a violation of Section 1 of the Sherman Antitrust Act, Plaintiff must

allege a conspiracy; that the conspiracy had the effect of restraining trade, and that trade was

restrained in the relevant market.  *Wampler v. Southwestern Bell Telephone Co.*, 597 F.3d 741 (5th

Cir. 2010).  Under Section 1 of the Sherman Act, a business "generally has a right to deal, or refuse

to deal, with whomever it likes, as long as it does it *independently."  Monsanto Co. v Spray -Rite*

*Service Corp.*, 465 U.S. 752 , 761 , 104 S. Ct. 1464 , 1469 79 L. Ed 2d 775 (1984) (emphasis added).

The Court must first determine the relevant market.

Here, the only product referenced is Michelin tires.  In rare circumstances, a single brand of

a product can constitute a relevant market for antitrust purposes.  *Eastman Kodak v. Image Tech.*

*Servs.,* 504 U.S. 451, 481–82, 112 S. Ct. 2072, 119 L. Ed.2d 265 (1992).  But that possibility is

limited to situations in which consumers are "locked in" to a specific brand by the nature of the

product.  *Id.*  There is no structural barrier to the interchangeability of Michelin tires with tires

produced by competing manufacturers, nor has LG  alleged any such structural barriers.  *PSKS, Inc.*

*v. Leegin Creative Leather Prods., Inc.*, 615 F.3d 412 (5th Cir. 2010).  The Fifth Circuit has held that

"absent exceptional market conditions, one brand in a market of competing brands cannot constitute a relevant product market." *Domed Stadium Hotel, Inc. v. Holiday Inns, Inc.,* 732 F.2d 480, 488 (5th Cir. 1984).  Courts have regularly held that a single brand, no matter how distinctive or unique, cannot be its own market.  *Little Ceasar Enterprises, Inc. v. Smith,* 34 F.Supp.2d 459, 477 n. 30 (E.D. Mich. 1998) (collecting cases).

Although Plaintiff alleges that there is no racing tire comparable to a Michelin, "even where brand loyalty is intense, courts reject the argument that a single-branded product constitutes a relevant market." *Green Country Food Market, Inc. v. Bottling Group, LLC,* 371 F.3d 1275, 1282 (10th Cir. 2004).  Michelin's refusal to sell does not prevent LG from obtaining other tires or racing different vehicles.  In any event, the Court finds that harm to overall competition is not alleged. There is no allegation that Michelin, GM, LLC and Corvette Racing compete against each other. Vertical restraints are to be judged according to the rule of reason.  *See Carlson Mach. Tools, Inc. v. Am. Tool, Inc.* 678 F.2d 1253,1259 (5th Cir. 1982).  The effect of a challenged practice under the rule of reason must be sufficient so that it "may suppress or even destroy competition" in the relevant market.  *Chicago Bd. Of Trade v. United States*, 246 U.S. 231, 238 (1918).  The focus is on the impact to competition as a whole within the relevant market, and not just on the impact to a competitor.  *R.D. Imports Ryno Indus. Inc. v Mazda dist. (Gulf) Inc.*, 807 F.2d 1222, 1225 (5th Cir. 1987).  Only when the restraining force of an agreement or other arrangement affecting trade becomes unreasonably disruptive of market functions such as price setting, resource allocation, market entry or output designation is a violation of the Sherman Act threatened.  *See NCAA v. Board of Regents*, 468 U.S. 85, 98, 104 S. Ct. 2948, 82 L. Ed.2d 70 (1984).  Section 1 claimants must show

more than mere injury to their own positions as competitors in the market.  *Les Shockley Racing, Inc. v. National Hot Rod Ass'n*, 884 F. 2d 504 (9th Cir. 1989).  Under the rule of reason, an agreement will be found unlawful only if the plaintiff shows that it actually had an adverse effect on competition. *See Consol. Metal Prods. v. Am. Petroleum Inst.,* 846 F.2d 284, 292-93 (5th Cir. 1988).

Plaintiff has alleged that the agreement is a *per se* violation of the Sherman Act, and in the alternative, guided by the rule of reason.  In *NYNEX,* the Supreme Court clarified that a necessary precondition for a *per se* unlawful group boycott is that it must be "horizontal," *i.e.,* it must involve an agreement among firms that ordinarily compete with one another at the same level of the market. *See NYNEX,* 525 U.S. at 135, 119 S. Ct. 493 ("[P]recedent limits the *per se* rule in the boycott context to cases involving horizontal agreements among direct competitors."); *see also Bus. Elecs. Corp.,* 485 U.S. at 730, 108 S. Ct. 1515 ("Restraints imposed by agreement between competitors have traditionally been denominated as horizontal restraints, and those imposed by agreement between firms at different levels of distribution as vertical restraints.").  To make a *per se* case, the horizontal agreement need not be between competitors of the victim.

In *Klor's, Inc. v. Broadway-Hale Stores, Inc.,* 359 U.S. 207, 79 S. Ct. 705, 3 L. Ed.2d 741 (1959), a boycott arranged by a single competitor of the victim retailer, but carried out by a "wide combination" consisting of manufacturers and distributors, as well as the competing retailer, led to *per se* liability.  *Id.* at 212-13, 79 S.Ct. 705.  *NYNEX* harmonized *Klor's* with its rule limiting *per se* analysis to horizontal boycotts: "Although *Klor's* involved a threat made by a *single* powerful firm, it also involved a horizontal agreement among those threatened, namely, the appliance suppliers, to hurt a competitor of the retailer who made the threat." 525 U.S. at 135, 119 S.Ct. 493.

*Cf. Northwest Stationers,* 472 U.S. at 294, 105 S.Ct. 2613 (*per se* liability applied to "efforts by a *firm or firms* to disadvantage competitors by either directly denying or persuading or coercing suppliers or customers to deny relationships the competitors need in the competitive struggle.") (internal quotations omitted and emphasis added).  The Supreme Court warned that decisions to put a victim out of business are not always the stuff of antitrust liability:  "To apply the *per se* rule here - where the buyer's decision, though not made for competitive reasons, composes part of a regulatory fraud - would transform cases involving business behavior that is improper for various reasons, say, cases involving nepotism or *personal pique,* into treble-damages antitrust cases." *Id.* at 136-37, 119 S. Ct. at 493 (emphasis supplied).

The petition here is quite clear that there has been no harm to any other competitors who drive cars other than a Corvette.  In fact, the petition does not allege with any specificity whether other Corvette teams have experienced the same cold shoulder treatment experienced by LG.  At best, there is only a cursory comment that other Corvette teams are also affected.  The Court has reviewed the petition and can find no affirmative allegations that any Corvette team was subject to the same treatment as LG.  At best, Plaintiff only alleges that the agreement precludes other Corvette teams but does not affirmatively state that such happened.

The Court agrees with GM, LLC that Plaintiff has simply failed (and cannot do so in any event) to show that harm to competition in the market place has occurred.  For  example, there is no allegation about a reduction in competition among tire manufacturers.  No tire manufacturers were excluded from the market place because of this agreement.  No tire manufacturers have been kept out of the market because of the agreement not to sell to LG.  Even if racing teams were a designated

subset of the relevant market, there is no allegation that there has been a substantial reduction in racing competition.  The petition is quite clear that racing goes on with a number of different cars represented.  Moreover, a point well established in this Circuit is that a corporation cannot conspire or combine with its own officers, employees, or wholly owned sales divisions and outlets in violation of section one.  *H & B Equipment Company, Inc. v. International Harvester Company,* 577 F.2d 239, 244 (5th Cir.1978) (citing cases).  *See also Cliff Food Stores, Inc. v. Kroger, Inc.,* 417 F.2d 203, 205–06 (5th Cir.1969).[2]

The Texas Free Enterprise and Antitrust Act states that its purpose is to maintain and promote economic competition in trade and commerce and to provide the benefits of that competition to Texas consumers.  *See* TEX. BUS. & COM. CODE ANN. § 15.04 (Vernon 2002). Antitrust laws protect competition, not competitors, and ultimately, the consumer is the beneficiary. *See Atlantic Richfield Co. v. USA Petrol. Co.,* 495 U.S. 328, 338, 110 S. Ct. 1884, 109 L. Ed.2d 333 (1990); *Roy B. Taylor Sales, Inc. v. Hollymatic Corp.,* 28 F.3d 1379, 1382 (5th Cir.1994).  The provisions of the Texas Free Enterprise and Antitrust Act are construed in harmony with federal judicial interpretations of comparable federal antitrust statutes to the extent they are consistent with the purpose of the Act.  *See* TEX. BUS. & COM. CODE ANN. § 15.04. For the reasons noted above, the Court also dismisses Plaintiff's claim under the state act.

---

[2]The Court notes that the Corvette Racing Team has fared rather poorly over the last two years.  In 2010, it won one of ten entered races.  In the 2011 ALMS season finale, it finished fourth behind Ferrari, Porshe, and BMW.

**Attempted Unlawful Monopolization and Monopolization**

Section 2 of the Sherman Act makes it unlawful for any person or firm to "monopolize, or attempt to monopolize, or combine or conspire with any other person or persons, to monopolize any part of the trade or commerce among the several States." 15 U.S.C. § 2. The offense of attempted monopolization in violation of section 2 of the Sherman Act has three elements, namely: (1) that the defendant engaged in predatory or exclusionary conduct, (2) that the defendant possessed the specific intent to monopolize, and (3) that there was a dangerous probability that the defendant would succeed in his attempt. *Taylor Pub. Co. v. Jostens, Inc.,* 216 F.3d 465, 474 (5th Cir. 2000). A plaintiff must also indicate that the defendant's act caused damage and provide some indication of the amount of damage. *State of Alabama v. Blue Bird Body Co., Inc.,* 573 F.2d 309, 317 n. 8 (5th Cir. 1978).

In order to state a claim for actual monopolization, the plaintiff needs to allege that the violator: (1) possesses monopoly power in the relevant market; and (2) acquired or maintained that power willfully, as distinguished from the power having arisen and continued by growth produced by the development of a superior product, business acumen or historic accident. *See U.S. v. Grinnell,* 384 U.S. 563, 86 S. Ct. 1698, 16 L. Ed.2d 778 (1966); *Stearns Airport Equip. Co., Inc. v. FMC Corp.,* 170 F.3d 518, 522 (5th Cir.1999). Monopoly power is the power of a seller "to control prices or exclude competition." *United States v. E.I. du Pont de Nemours & Co.,* 351 U.S. 377, 391, 76 S. Ct. 994, 100 L. Ed. 1264 (1956). Moreover, the Fifth Circuit holds that, as a matter of law, a market share of less than 50 percent is insufficient for a monopolization claim, but is not insufficient for an attempted monopolization claim. *See Domed Stadium Hotel, Inc. v. Holiday Inns, Inc.,* 732

F.2d 480, 489 (5th Cir. 1984); *Dimmitt Agri Indus., Inc. v. CPC Intern. Inc.,* 679 F.2d 516, 530–31,

533–34 (5th Cir. 1982), *cert. denied* 460 U.S. 1082, 103 S. Ct. 1770, 76 L. Ed.2d 344; *Rockbit*

*Industries U.S.A., Inc. v. Baker Hughes, Inc.,* 802 F.Supp. 1544, 1549–50 (S.D. Tex. 1991). Market

power is the ability to "control prices or exclude competition." *Spirit Airlines, Inc. v. Northwest*

*Airlines, Inc.,* 431 F.3d 917, 935 (6th Cir. 2005). Section 2 is violated only when there is "conduct

which unfairly tends to destroy competition itself." *Spectrum Sports, Inc. v. McQuillan,* 506 U.S.

447, 458, 113 S. Ct. 884, 122 L. Ed.2d 247 (1993). "[A] practice is not 'anticompetitive' simply

because it harms competitors .... Rather, a practice is 'anticompetitive' only if it harms the

competitive process." *Mumford v. GNC Franchising LLC,* 437 F.Supp. 2d 344, 354 (W.D. Pa. 2006)

(citations omitted).

LG must allege a specific product and geographic market in which the Court can determine

whether GM possesses monopoly power. Because the relevant market provides the framework

against which economic power can be measured, defining the product and geographic markets is a

threshold requirement under Section 2. *Spectrofuge Corp. v. Beckman Instruments, Inc.,* 575 F.2d

256, 276 (5th Cir.1978), *cert. denied,* 440 U.S. 939, 99 S. Ct. 1289, 59 L. Ed.2d 499 (1979). LG

defines the relevant geographic market as locations in the US and Canada in which ALMS has held

races since its inception in 1999, as well as all locations in which Corvette Racing participates in FIA

sanctioned events. Several states are identified. The products identified are homologated Corvettes

capable of racing in FIA events; racing tires that can be effectively used by a racing team to win an

ALMS racing event; and/or racing tires that can be used by a race team to consistently place in the

top three positions over the course of a racing season. There is, however, no allegation as to the

market share controlled by GM, LLC.  LG's allegations, without more, are insufficient as a matter

of law.  *See Domed Stadium Hotel, Inc.*, 732 F.2d at 489.

As to attempted monopolization, the numbers game of market percentage is not as stringent.

*See Cliff Food Stores, Inc. v. Kroger, Inc*. 417 F.2d 203, 207 n.2 (5th Cir. 1969).  However, a

defendant must have some legally significant share of the market before it approaches the level of

dangerous probability of success condemned by the attempt provision of section two.  *See H&B*

*Equipment Co., Inc*. 577 F.2d 239, 242 (5th Cir. 1978).

As to Plaintiff's homologation claims, the Court knows of no rule or law where a corporation

cannot deal with someone of its choosing to the exclusion of another in a pure economic context or

for that matter, as here, in a pure sporting context.  Generally, the Sherman Act does not restrict the

long recognized right of a trader or manufacturer engaged in an entirely private business, freely to

exercise his own independent discretion as to parties with whom he will deal.  *Verizon Commc'ns*

*Inc. v. Law Offices of Curtis V. Trinko*, 540 U.S. 398, 408, 124 S. Ct. 872, 157 L. Ed. 2d 823 (2004).

There is simply no showing that GM, LLC monopolizes the Michelin tire market.  A score of other

racing teams use Michelin tires, some more successfully than GM, LLC.  Likewise, there is no

showing that Michelin's actions in refusing to sell harms the competitive process as opposed to LG,

the competitor.

The Court notes that antitrust laws are not designed to protect sporting events but rather to

guarantee economic competition.  LG's pleadings do not demonstrate that any action of Michelin

or GM, LLC have prevented it from racing in the ALMS.  It merely states that, because it does not

have Michelin tires, it cannot be competitive.  Nor does LG state that all cars in the ALMS use

Michelin.  It may well be that GM, LLC is engaged in unsportsmanlike conduct and that its actions are wholly petty and self-centered.  But such actions do not rise to antitrust claims under either Section 1 or 2 of the Sherman Act.

As to the homologation allegations, even if such could be said to state some kind of antitrust claim, GM, LLC cannot enter into a conspiracy with itself.  As alleged, Corvette Racing is part of GM, LLC and Fehan is the program manager.  Plaintiff's claims under Sections 1 and 2 of the Sherman Act should therefore be dismissed as well as under the state statute.

**Tortious Interference with Prospective Contractual Relations and Contract**

The elements of tortious interference with an existing contract are: (1) an existing contract subject to interference; (2) a willful and intentional act of interference with the contract; (3) that proximately caused the plaintiff's injury; and (4) caused actual damages or loss.  *Prudential Ins. Co. of Am. v. Fin. Review Servs., Inc.,* 29 S.W.3d 74, 77 (Tex. 2000).  To prove a cause of action for tortious interference with a prospective contract, a plaintiff must establish the following elements: (1) a reasonable probability that the parties would have entered into a business relationship; (2) an intentional, malicious intervention or an independently tortious or unlawful act performed by the defendant with a conscious desire to prevent the relationship from occurring or with knowledge that the interference was certain or substantially likely to occur as a result of its conduct; (3) a lack of privilege or justification for the defendant's actions; and (4) actual harm or damages suffered by the plaintiff as a result of the defendant's interference, *i.e.*, the defendant's actions prevented the relationship from occurring.  *See Tex. Disposal Sys. Landfill, Inc. v. Waste Mgmt. Holdings, Inc.,*

219 S.W.3d 563, 590 (Tex.App. - Austin 2007, pet. denied) (citing *Bradford v. Vento,* 48 S.W.3d

749, 757 (Tex. 2001) (agreeing with appellate court's analysis of issue)).  To establish liability for

interference with a prospective contractual relationship, the plaintiff must prove that it was harmed

by the defendant's conduct that was either independently tortious or unlawful, *i.e.* conduct that would

violate some other recognized tort duty. *See Wal-Mart Stores, Inc., v. Sturges*, 52 S.W. 3d 711 (Tex.

2001).

Based on the allegations in the petition, the Court finds that LG has stated a claim for

interference with existing contract.  LG alleges that the conduct of GM, LLC prevented it from

obtaining tires and this resulted in its driver quitting, resulting in a loss of revenue.  Moreover, LG's

petition also fairly sets out that GM, LLC's actions prevented it from acquiring tires as it had in the

past and was accustomed to doing so.  As to the prospective contract relations, the Court finds that

there is an independent tort alleged.  This tort is that of interference with contractual relations.

Further, any intentional invasion of, or interference with, property rights, personal rights, or personal

liberty, causing some injury without just cause or excuse is an actionable tort. *See Cooper v. Steen*,

318 S.W.3d 750 (Tex.Civ. App. - Dallas 1958, no writ).  The Court declines to dismiss these

particular claims.


**<u>Civil Conspiracy</u>**

An actionable civil conspiracy is a combination by two or more persons to accomplish an

unlawful purpose or to accomplish a lawful purpose by unlawful means. *Massey v. Armco Steel Co.,*

652 S.W.2d 932, 934 (Tex. 1983).  The essential elements of a civil conspiracy are: (1) two or more

persons; (2) an object to be accomplished; (3) a meeting of the minds on the object or course of action; (4) one or more unlawful, overt acts; and (5) damages as the proximate result. *Juhl v. Airington,* 936 S.W.2d 640, 644 (Tex. 1996); *Triplex Commc'ns, Inc. v. Riley,* 900 S.W.2d 716, 719 (Tex.1995).  It is not the agreement itself but an injury to the plaintiff resulting from an act done pursuant to the common purpose that gives rise to a cause of action for civil conspiracy. *Carroll v. Timmers Chevrolet, Inc.,* 592 S.W.2d 922, 925 (Tex. 1979).  In other words, recovery is not based on the conspiracy but on an underlying tort. *Tilton v. Marshall,* 925 S.W.2d 672, 681 (Tex. 1996). Thus, a conspiracy claim is a derivative tort. *Id.*  An interference with contract claim is such an independent tort which would support a conspiracy claim.  LG has pled such with specificity in its petition, therefore the motion to dismiss that claim should be denied.

**Texas Unfair Competition**

"Unfair competition" is not, in and of itself, a separate tort.  Rather, it is an "umbrella for all statutory and nonstatutory causes of action arising out of business conduct which is contrary to honest practice in industrial or commercial matters." *United States Sporting Prods., Inc. v. Johnny Stewart Game Calls, Inc.,* 865 S.W.2d 214, 217 (Tex.App .- Waco 1993, writ denied) (quoting *American Heritage Life Ins. Co. v. Heritage Life Ins. Co.,* 494 F.2d 3, 14 (5th Cir. 1974)).  Within the broad scope of "unfair competition," as a general area of the law, Texas recognizes a number of independent causes of action. *Id.; see, e.g., Wal-Mart Stores, Inc. v. Sturges,* 52 S.W.3d 711 (Tex. 2001) (interference with prospective business relations); *Browning Ferris, Inc. v. Reyna,* 865 S.W.2d 925, 926 (Tex. 1993) (tortious interference with an existing contract); *Hurlbut v. Gulf Atl. Life Ins.*

*Co.,* 749 S.W.2d 762, 766 (Tex. 1987) (business disparagement); *All Am. Builders, Inc. v. All Am. Siding of Dallas, Inc.,* 991 S.W.2d 484, 488 (Tex.App. - Fort Worth 1999, no pet.) (trade name infringement); *United States Sporting Prods.,* 865 S.W.2d at 217 (misappropriation).  And the Texas Legislature has created private causes of action to redress harm caused by some types of unfair competition.  *See, e.g.,* TEX. BUS. & COM. CODE ANN. § 15.21 (Vernon 2002) (providing private cause of action for person whose business or property is injured by unlawful restraint-of-trade, monopolization, or price-fixing); TEX. INS. CODE ANN. art. 21.21 § 16 (Vernon Supp. 2002) (providing private cause of action for person damaged by unfair method of competition or unfair or deceptive act or practice in the business of insurance).  Liability for unfair competition requires a "finding of some independent substantive tort or other illegal conduct." *Schoellkopf v. Pledger,* 778 S.W.2d 897, 904 (Tex.App. - Dallas 1989, no writ).  Because the Court has found that LG stated a claim for interference with contract as well as prospective relations, the Court declines to dismiss LG's unfair competition claim.

Because Plaintiff has not opposed Defendant Michelin's joinder in GM's motion, all findings as to the claims asserted against GM shall be equally applicable to Michelin.

## RECOMMENDATION

Defendant General Motors, LLC f/k/a NGMCO, Inc.'s Motion to Dismiss (Dkt. 6) should be GRANTED in part and DENIED in part, Plaintiff should be required to file an amended complaint accordingly, and a scheduling order should be entered to govern the remaining claims in this case.

Within fourteen (14) days after service of the magistrate judge's report, any party may serve and file written objections to the findings and recommendations of the magistrate judge.   28 U.S.C.A. § 636(b)(1)(C).

Failure to file written objections to the proposed findings and recommendations contained in this report fourteen days after service shall bar an aggrieved party from *de novo* review by the district court of the proposed findings and recommendations and from appellate review of factual findings accepted or adopted by the district court except on grounds of plain error or manifest injustice. *Thomas v. Arn*, 474 U.S. 140, 148 (1985); *Rodriguez v. Bowen*, 857 F.2d 274, 276–77 (5th Cir. 1988).

**SIGNED this 6th day of March, 2012.**


_____
DON D. BUSH
UNITED STATES MAGISTRATE JUDGE